LATHAM & WATKINS LLP
Jason M. Ohta  (Bar No. 211107)
 *jason.ohta@lw.com*
Amy Hargreaves (Bar No. 266255)
 *amy.hargreaves@lw.com*
12670 High Bluff Drive
San Diego, California 92130
Telephone: +1.858.523.5400
Facsimile: +1.858.523.5450

Amanda Barnett (Bar No. 319046)
 *amanda.barnett@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

Alexa Solimano (Bar No. 335740)
 *alexa.solimano@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

*Attorneys for Defendants Adventist Health
System/West dba Adventist Health, Adventist
Health Clearlake Hospital, Inc., St. Helena
Hospital, Inc., Adventist Health California
Medical Group, and Adventist Health Southern
California Medical Foundation*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF CALIFORNIA *ex rel.* MARY JAMES,<br><br>    Plaintiff,<br><br>    v.<br><br>ADVENTIST HEALTH SYSTEM/WEST dba ADVENTIST HEALTH, a California Corporation, et al.,<br><br>    Defendants. | CASE NO. 3:20-cv-06458-LB<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Date: November 17, 2022<br>Time: 9:30 a.m.<br>Judge: Hon. Laurel Beeler<br>Ctrm: Courtroom B, 15th Floor |

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2 **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

3          PLEASE TAKE NOTICE that on November 17, 2022 at 9:30 a.m., or as soon thereafter

4 as the parties may be heard, before the Honorable Laurel Beeler, Magistrate Judge, United States

5 District Court for the Northern District of California, in the San Francisco Courthouse,

6 Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants

7 Adventist Health System/West dba Adventist Health, Adventist Health Clearlake Hospital, Inc.,

8 St. Helena Hospital, Inc., Adventist Health California Medical Group, and Adventist Health

9 Southern California Medical Foundation ("Adventist Health Defendants") will and hereby do

10 move this Court for an order dismissing Relator's First Amended Complaint ("FAC") (Dkt. No.

11 8).  This motion is brought on the grounds that: (1) Relator's FAC fails to satisfy the heightened

12 pleading requirements of Federal Rule of Civil Procedure 9(b); (2) Relator does not state any

13 claim for relief under the federal False Claims Act ("FCA") or California False Claims Act

14 ("CFCA"); (3) Relator's FCA/CFCA retaliation claims and her defamation claims are time-

15 barred; and (4) Relator fails to plead a viable FCA/CFCA retaliation claim and defamation claim.

16          Adventist Health Defendants' Motion is based on this Notice of Motion and Motion to

17 Dismiss, the following Memorandum of Points and Authorities, all pleadings and papers in this

18 action, and any oral argument of counsel.

19          Adventist Health Defendants seek an order pursuant to Federal Rule of Civil Procedure

20 9(b) and 12(b)(6) dismissing the FAC in its entirety for failure to state a claim upon which relief

21 can be granted.

22 /

23 /

24 /

25 /

26 /

27 /

28 /

1    Dated: September 26, 2022                    Respectfully submitted,

2                                                 LATHAM & WATKINS LLP

3
                                                  By: */s/ Jason M. Ohta*
4                                                        Jason M. Ohta

5                                                      *Attorneys for Attorneys for Defendants*
                                                      *Adventist Health System/West dba Adventist*
6                                                      *Health, Adventist Health Clearlake*
                                                      *Hospital, Inc., St. Helena Hospital, Inc.,*
7                                                      *Adventist Health California Medical Group,*
                                                      *and Adventist Health Southern California*
8                                                      *Medical Foundation*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND ................................................................................................................. 2

III. LEGAL STANDARD .......................................................................................................... 3

IV. ARGUMENT ...................................................................................................................... 4

    A. Relator Fails to Describe a Scheme to Defraud with Particularity ....................... 4

    B. Relator Impermissibly Groups Multiple Defendants Together ............................. 6

    C. Relator Fails to Plead a Presentment or False Certification Claim........................ 9

        1. Relator Fails to Plead Falsity of Claims or Certifications ........................ 9

        2. Relator Fails to Plead Materiality of False Claims or Certifications ....................................................................................... 12

        3. Relator Fails to Plead Submission of False Claims ................................ 13

        4. Relator Fails to Allege Scienter as to False Claims or Certifications ....................................................................................... 15

    D. Relator Fails to Plead a Reverse False Claim ..................................................... 16

    E. Relator Fails to Plead a Conspiracy Claim Under the FCA................................. 17

    F. Relator Fails to Plead an FCA Retaliation Claim ............................................... 18

    G. Relator Fails to Plead a Defamation Claim......................................................... 21

V. CONCLUSION ................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adomitis ex rel. United States v. San Bernardino Mountains Cmty. Hosp. Dist.*,
    816 F. App'x 64 (9th Cir. 2020) ....................................................................9, 15, 16

*Alexander v. Cmty. Hosp. Long Beach*,
    46 Cal. App. 5th 238 (Cal. Ct. App. 2020) ..............................................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................3

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1990) .....................................................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................3

*Bly-Magee v. California*,
    236 F.3d 1014 (9th Cir. 2001) ...................................................................................4

*Bowles v. Constellation Brands, Inc.*,
    444 F. Supp. 3d 1161 (E.D. Cal. 2020) ...................................................................24

*Briganti v. Chow*,
    42 Cal.App.5th 504 (Cal. Ct. App. 2019) ...............................................................22

*Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ...........................................................................13, 14

*City of L.A. Dep't of Water & Power v. Asplundh Constr. Corp.*,
    No. CV 12-06057 MMM, 2012 WL 12941957 (C.D. Cal. Nov. 15, 2012) ..............8

*CSPC Dophen Corp. v. Zhixiang Hu*,
    No. 2:17-cv-1895 MCE DB PS, 2018 WL 6184617 (E.D. Cal. Nov. 27, 2018)......23

*Destfino v. Reiswig*,
    630 F.3d 952 (9th Cir. 2011) .....................................................................................7

*Ebeid ex rel. United States v. Lungwitz*,
    616 F.3d 993 (9th Cir. 2010) .................................................................................4, 14

*Frazier ex rel. United States v. Iasis Healthcare Corp.*,
    392 F. App'x 535 (9th Cir. 2010) ...........................................................................12

*Holley v. Crank*,
    400 F.3d 667 (9th Cir. 2005) ..............................................................................8

*Holzner v. DaVita Inc.*,
    No. 21-55261, 2022 WL 726929 (9th Cir. Mar. 10, 2022).....................................11

*Jacobson v. Schwarzenegger*,
    357 F. Supp. 2d 1198 (C.D. Cal. 2004) ...............................................................23

*John Doe 2 v. Super. Ct.*,
    1 Cal. App. 5th 1300 (Cal. Ct. App. 2016)......................................................23, 24

*John Russo Indus. Sheetmetal, Inc. v. City of L.A. Dep't of Airports*,
    240 Cal. Rptr. 3d 217 (Cal. Ct. App. 2018) ...........................................................9

*Lee v. Eden Med. Ctr.*,
    690 F. Supp. 2d 1011 (N.D. Cal. 2010) ...............................................................24

*Lesnik v. Eisenmann SE*,
    No. 16-CV-01120-LHK, 2018 WL 4700342 (N.D. Cal. Oct. 1, 2018)......................18

*Lillie v. ManTech Int'l Corp.*,
    837 F. App'x 455 (9th Cir. 2020) ...................................................................19, 20

*Makaeff v. Trump Univ., LLC*,
    715 F.3d 254 (9th Cir. 2013) ..............................................................................22

*McVeigh v. Recology S.F.*,
    213 Cal. App. 4th 443 (Cal. Ct. App. 2013) .........................................................19

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ............................................................................19

*Moore v. Cal. Inst. of Tech. Jet Propulsion Lab'y*,
    275 F.3d 838 (9th Cir. 2002) ..............................................................................19

*Parker v. Sea-Mar Cmty. Health Ctr.*,
    853 F. App'x 197 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 897 (2022)..............11, 12

*Pascal v. Agentra, LLC*,
    No. 19-CV-02418-DMR, 2019 WL 5212961 (N.D. Cal. Oct. 16, 2019) ...................8

*Seelig v. Infinity Broad. Corp.*,
    97 Cal. App. 4th 798 (Cal. Ct. App. 2002) ...........................................................24

*Shimono v. Harbor Freight Tools USA, Inc.*,
    No. EDCV16-1052-CAS(MRWx), 2016 WL 6238483 (C.D. Cal. Oct. 24,
    2016) ..............................................................................................................4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

ADVENTIST HEALTH DEFENDANTS' MOT. TO
DISMISS RELATOR'S AMENDED COMPL.
CASE NO. 3:20-cv-06458-LB

*Shively v. Bozanich*,
  31 Cal. 4th 1230 (Cal. 2003), *as modified* (Dec. 22, 2003) ....................................................22

*Taus v. Loftus*,
  40 Cal. 4th 683 (Cal. 2007)..........................................................................................................24

*United States v. Chang*,
  No. CV-13-3772-DMG, 2017 WL 10544289 (C.D. Cal. July 25, 2017) .................................6

*United States v. Corinthian Colls.*,
  655 F.3d 984 (9th Cir. 2011) .....................................................................................................7

*United States ex rel. Campie v. Gilead Scis., Inc.*,
  862 F.3d 890 (9th Cir. 2017) .............................................................................................12, 15

*United States ex rel. Dresser v. Qualium Corp.*,
  No. 5:12-CV-01745-BLF, 2016 WL 3880763 (N.D. Cal. July 18, 2016).............................10

*United States ex rel. Fallon v. Bell Transit Corp.*,
  No. 16-CV-06994-PJH, 2021 WL 965379 (N.D. Cal. Mar. 15, 2021)...................................17

*United States ex rel. Ginger v. Ensign Grp., Inc.*,
  No. 8:15-cv-00389-JWH-DFMx, 2021 WL 9406134 (C.D. Cal. July 26, 2021)................7, 8

*United States ex rel. Hopper v. Anton*,
  91 F.3d 1261 (9th Cir. 1996) ...............................................................................................19, 20

*United States ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*,
  No. CV 17-1694 PSG, 2019 WL 3282619 (C.D. Cal. July 16, 2019), *rev'd*
  *and remanded on other grounds, Integra Med Analytics LLC v. Providence*
  *Health & Servs.*, 854 F. App'x 840 (9th Cir. 2021)................................................................15

*United States ex rel. Jones v. Sutter Health*,
  No. 18-CV-02067-LHK, 2021 WL 3665939 (N.D. Cal. Aug. 18, 2021)...................4, 5, 7, 15

*United States ex rel. Kelly v. Serco, Inc.*,
  846 F.3d 325 (9th Cir. 2017) .....................................................................................................17

*United States ex rel. Lee v. SmithKline Beecham, Inc.*,
  245 F.3d 1048 (9th Cir. 2001) .....................................................................................................4

*United States ex rel. Marion v. Heald Coll., LLC*,
  No. 5:12-cv-02067-PSG, 2015 WL 4512843 (N.D. Cal. July 24, 2015)................................18

*United States ex rel. Martinez v. KPC Healthcare Inc.*,
  No. 8:15-cv-01521-JLS-DFM, 2017 WL 10439030 (C.D. Cal. June 8, 2017) ......................17

*United States ex rel. Mateski v. Raytheon Co.*,
  No. 2:06-cv-03614-ODW(KSx), 2017 WL 3326452 (C.D. Cal. Aug. 3, 2017),
  *aff'd*, 745 F. App'x 49 (9th Cir. 2018)......................................................................................9

*United States ex rel. Modglin v. DJO Glob. Inc.*
    48 F. Supp. 3d 1362 (C.D. Cal. 2014), *aff'd sub nom. United States v. DJO
    Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) .................................................................14, 15

*United States, ex rel. Modglin v. DJO Glob. Inc.*,
    114 F. Supp. 3d 993 (C.D. Cal. 2015), *aff'd sub nom. United States v. DJO
    Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) .................................................................14, 16

*United States ex rel. Ormsby v. Sutter Health*,
    444 F. Supp. 3d 1010 (N.D. Cal. 2020) .........................................................................17

*United States ex rel. Silingo v. WellPoint, Inc.*,
    904 F.3d 667 (9th Cir. 2018) .........................................................................................9, 15

*United States v. Eisenhower Med. Ctr.*,
    No. 5:18-CV-02667-RGK-KK, 2020 WL 6153103 (C.D. Cal. May 12, 2020) ....................20

*United States v. Kinetic Concepts, Inc.*,
    No. CV 08-01885-BRO, 2017 WL 2713730 (C.D. Cal. Mar. 6, 2017) .................................13

*United States v. Kitsap Physicians Serv.*,
    314 F.3d 995 (9th Cir. 2002) .........................................................................................14

*United States v. McKesson Corp.*,
    No. 19-CV-02233-DMR, 2020 WL 4805034 (N.D. Cal. Aug. 18, 2020) ..............................14

*United States v. Scan Health Plan*,
    No. CV 09-5013-JFW, 2017 WL 4564722 (C.D. Cal. Oct. 5, 2017) .....................................13

*United States v. Vandewater Int'l Inc.*,
    No. 2:17-cv-04393-RGK-KS, 2019 WL 6917927 (C.D. Cal. Sept. 3, 2019) ...................17, 18

*United States v. Walgreen Co.*,
    No. 2:21-CV-00080-JRG-CRW, 2022 WL 791562 (E.D. Tenn. Mar. 14,
    2022) ...............................................................................................................................8

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
    579 U.S. 176 (2016) .........................................................................................3, 12, 13

**Statutes**

U.S.C. § 3739(h) ...............................................................................................................2

31 U.S.C. § 3729(a)(1)(A) .................................................................................................2, 9

31 U.S.C. § 3729(a)(1)(B) ................................................................................................9

31 U.S.C. § 3729(a)(1)(C) .................................................................................................2

31 U.S.C. § 3729(a)(1)(G) .................................................................................................2

31 U.S.C. § 3729(a)(1)(G) ...............................................................................................2, 16

31 U.S.C. § 3729(b)(1) ..........................................................................................................15

31 U.S.C § 3730(h) ................................................................................................................20

31 U.S.C § 3730(h)(3) ...........................................................................................................18

42 U.S.C. § 1320a-7k(d)(2)-(3) .............................................................................................17

Cal. Civ. Code § 47(c) ...........................................................................................................24

Cal. Civ. Proc. Code § 340(c) ...............................................................................................21

Cal. Gov't Code § 12651(a)(3), (7)-(8) ..................................................................................2

Cal. Gov't Code § 12653 .........................................................................................................2

Cal. Gov't Code § 12653(c).....................................................................................................18

**Rules**

Fed. R. Civ. P. 8(a) ...........................................................................................................15, 16

Fed. R. Civ. P. 9(b) ........................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)..................................................................................................*passim*

**Other Authorities**

CMS, Medicare Learning Network, https://www.cms.gov/Outreach-and-
    Education/Medicare-Learning-Network-
    MLN/MLNMattersArticles/downloads/se0441.pdf (last visited Sept. 26, 2022)...................12

Medicare Benefit Policy Manual, Chapter 15, 60.1 (revised May 20, 2022) ...............................12

Wash. Admin. Code § 246-817-550(9)..............................................................................11, 12

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3    Relator Mary James ("Relator") is a registered nurse who worked as an Emergency

4    Department ("ED") director at Defendant St. Helena Clearlake Hospital ("SHCL") for less than

5    four months before she was terminated for improperly performing a service outside the scope of

6    her nursing license.  *See* First Amended Complaint, Dkt. No. 8 ("FAC") ¶¶ 8, 93.  Relator's

7    termination appears to be her primary motivation for bringing this frivolous *qui tam* action.

8    Relator outlines in copious detail her grievances against former coworkers whom she believes

9    contributed to her termination and subsequent investigation by the California Board of

10   Registered Nursing ("BRN") into reports that Relator had diverted controlled substances and

11   committed documentation errors (along with the violation for practicing outside the scope of her

12   nursing license).  *Id.* ¶¶ 67–128.  All of these allegations are irrelevant to Relator's

13   whistleblower claims.

14   Relator fails to devote the same level of detail to her allegations that Defendants violated

15   the False Claims Act ("FCA") and California False Claims Act ("CFCA").  *Id.* ¶¶ 44–58.

16   Relator's dearth of supporting allegations for her laundry list of FCA and CFCA claims is

17   unsurprising—Relator worked at SHCL for an exceedingly brief period, during which she

18   alienated her coworkers and concerned her supervisors.  Her paltry and conclusory allegations

19   fail to meet the rigorous standard for pleading fraud with particularity under Federal Rule of

20   Civil Procedure 9(b), including the requirement that she allege the role of each Defendant in the

21   supposed fraudulent scheme.  Relator also fails to plead the falsity, submission, materiality, and

22   scienter elements of an FCA claim.  Relator's reverse false claims and conspiracy claims

23   likewise fail because her allegations are similarly sparse.

24   Finally, Relator's FCA retaliation and defamation claims are clearly time-barred under

25   the relevant statutes.  Even if these claims were timely brought, Relator fails to allege any of the

26   elements necessary to plead an FCA retaliation claim.  Similarly, Relator's claims about negative

27   opinions expressed by her former coworkers to the BRN during its investigation into serious

28   allegations against Relator do not establish a defamation claim under California law.

1    Accordingly, Relator's FAC must be dismissed with prejudice under Federal Rules of

2    Civil Procedure 12(b)(6) and 9(b).

3    **II.    BACKGROUND**

4    SHCL hired Relator as the ED Director in December 2014, and terminated her less than

5    four months later.  *See* FAC ¶¶ 8, 93.  Shortly before her termination, a complaint was filed

6    against Relator with the BRN for practicing outside the scope of her nursing license by

7    attempting to place an arterial line in a patient.  *See id.* ¶ 99.  The BRN subsequently expanded

8    its investigation based on reports that Relator had committed documentation errors and diverted

9    controlled substances.  *Id.* ¶ 108.  The investigation ultimately led to the public disclosure of a

10   formal accusation against Relator.  *Id.* ¶ 124.  Over four years after the BRN complaint was filed,

11   on May 9, 2019, Relator entered into a stipulated settlement with the BRN.  *Id.* ¶ 127.

12   On September 15, 2020, Relator filed this *qui tam* action against Defendants Adventist

13   Health System/West dba Adventist Health; Adventist Health Clearlake Hospital, Inc.; St. Helena

14   Hospital, Inc.; Adventist Health California Medical Group; Adventist Health Southern California

15   Medical Foundation (collectively, "Adventist Health Defendants"); Adventist Health

16   International; Adventist Health System, a Florida Corporation; Dr. Rodney Look; David Santos;

17   and Acute Medical Providers.  Relator's complaint alleged submission of false claims, retention

18   of overpayments, conspiracy, and retaliation under the federal FCA, 31 U.S.C. § 3729(a)(1)(A)-

19   (C), (G) and § 3739(h), and the CFCA, Cal. Gov't Code § 12651(a)(3), (7)-(8), and § 12653.  *See*

20   Dkt. No. 1.  Relator also alleged defamation under California state law.  *Id.*  Three months later,

21   Relator filed a FAC with essentially identical claims.  Dkt. No. 8.

22   Relator's FAC adopts a "kitchen sink" approach to her FCA and CFCA claims, including

23   a perfunctory list of all conceivable types of fraudulent billing—ranging from unnecessary

24   patient admissions to upcoding to duplicative or unnecessary services, and even kickbacks (all

25   lacking particularized allegations establishing any basis for such claims).  *See* FAC ¶¶ 44–54, 56.

26   Next, Relator turns to claims (at FAC ¶¶ 67–128) that her coworkers (and Defendants) retaliated

27   against her for her "efforts to eliminate waste, address staffing shortages, improve patient care

28   and employee safety, and ensure regulatory compliance," *id.* ¶ 5, and in the process, defamed

1    Relator by notifying the BRN that she was "mentally unstable, a drug addict, grossly negligent,

2    and that Relator's alleged actions were outside the scope of practice and therefore warranted a

3    formal accusation," *id.* ¶ 172.[1]

4          On May 17, 2022, the Government filed its notice of election to decline intervention and

5    moved to unseal the "complaint, summons, and case management order." Dkt. No. 18. On May

6    18, 2022, the Court granted the Government's motion, but all remaining filings in the case,

7    including the FAC, remained under seal. Dkt. No. 19. On June 13, 2022, Adventist Health

8    Defendants were served with Relator's initial Complaint, rather than the operative FAC. Dkt.

9    No. 23. On July 28, 2022, Adventist Health Defendants were served with the FAC and agreed to

10   waive service. Dkt. Nos. 25–29. On September 14, 2022, Relator filed a notice voluntarily

11   dismissing Defendants Adventist Health International, Adventist Health System (Florida

12   Corporation), and David Santos. Dkt. No. 30.

13   **III.   <u>LEGAL STANDARD</u>**

14         Relator's FAC "fails to state a claim upon which relief can be granted," and therefore

15   must be dismissed. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must

16   contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

17   face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Conclusory

18   allegations of fact are not accepted as true, *see id.*, and the allegations "must be enough to raise a

19   right to relief above the speculative level" on the assumption that those allegations are true, *Bell*

20   *Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The court must dismiss a complaint that does

21   not assert a cognizable legal theory or fails to plead sufficient facts to support an otherwise

22   cognizable legal theory. Fed. R. Civ. P. 12(b)(6); *Balistreri v. Pacifica Police Dep't*, 901 F.2d

23   696, 699 (9th Cir. 1990).

24         Because the False Claims Act is an anti-fraud statute, Relator must plead her allegations

25   with "particularity" under Rule 9(b). *See Universal Health Servs., Inc. v. United States ex rel.*

26

27   _____

[1] Relator's FAC also includes a section titled, "EMTALA Violations." *See* FAC ¶¶ 61–66.
However, as Relator does not list claims under the Emergency Medical Treatment and Active
Labor Act ("EMTALA") among the causes of action sought by the FAC, Adventist Health
28   Defendants need not address those allegations in their motion to dismiss.

ADVENTIST HEALTH DEFENDANTS' MOT. TO
DISMISS RELATOR'S AMENDED COMPL.
CASE NO. 3:20-cv-06458-LB

1  *Escobar*, 579 U.S. 176, 196 n.6 (2016).  "To satisfy this standard, the allegations must be

2  'specific enough to give defendants notice of the particular misconduct which is alleged to

3  constitute the fraud charged so that they can defend against the charge and not just deny that they

4  have done anything wrong.'"  *United States ex rel. Jones v. Sutter Health*, No. 18-CV-02067-

5  LHK, 2021 WL 3665939, at *3 (N.D. Cal. Aug. 18, 2021) (quoting *Semegen v. Weidner*, 780

6  F.2d 727, 731 (9th Cir. 1985)).  To do so, a relator must allege "the who, what, when, where, and

7  how of the misconduct charged," *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th

8  Cir. 2010) (internal quotations and citations omitted), as well as "what is false or misleading

9  about [the purportedly fraudulent conduct], and why it is false," *Shimono v. Harbor Freight

10  Tools USA, Inc.*, No. EDCV16-1052-CAS(MRWx), 2016 WL 6238483 at *5 (C.D. Cal. Oct. 24,

11  2016) (internal quotations and citations omitted).  "[B]road allegations includ[ing] no

12  particularized supporting detail" cannot suffice to meet this standard.  *See Bly-Magee v.

13  California*, 236 F.3d 1014, 1018 (9th Cir. 2001); *see also United States ex rel. Lee v. SmithKline

14  Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001) (holding a "broad claim" with "no factual

15  support" did not satisfy Rule 9(b)).

16  **IV.   ARGUMENT**

17    **A.    Relator Fails to Describe a Scheme to Defraud with Particularity**

18    Relator's FAC fails to meet the Rule 9(b) standard for alleging fraud with particularity

19  under the FCA because she fails to allege "the who, what, when, where, and how of the

20  misconduct charged," *Ebeid*, 616 F.3d at 998, or "what is false or misleading about [the

21  purportedly fraudulent conduct], and why it is false," *Shimono*, 2016 WL 6238483 at *5.  "Rule

22  9(b) serves . . . to deter the filing of complaints as a pretext for the discovery of unknown

23  wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges,

24  and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society

25  enormous social and economic costs absent some factual basis."  *Bly-Magee*, 236 F.3d at 1018

26  (internal quotations and citations omitted).  "A motion to dismiss a complaint 'under Rule 9(b)

27  for failure to plead with particularity is the functional equivalent of a motion to dismiss under

28

1   Rule 12(b)(6) for failure to state a claim.'" *Jones*, 2021 WL 3665939, at \*4 (citing *Vess v. Ciba-*

2   *Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003)).

3         Here, Relator alleges a laundry list of alleged FCA violations, ranging from unnecessary

4   inpatient admissions to duplicative or upcoded services, and even referring obliquely to "illegal

5   kickbacks." *See* FAC ¶ 2.  Despite the breadth of her claims, however, Relator devotes fewer

6   than three pages of her FAC to describing *all* of those alleged violations.  *See id.* ¶¶ 44–54, 56.

7   These exceedingly brief and conclusory allegations lack the level of detail required under Rule

8   9(b), particularly as they do not provide any level of detail about who provided the allegedly

9   unlawful services, why such services were unlawful, or how or from whom Relator learned that

10   such activities had occurred.

11         For instance, Relator alleges that there was "unrelenting pressure" on ED physicians to

12   fraudulently admit patients by assigning higher charge levels than warranted, possibly from ED

13   Medical Directors Dr. Kathie Calloway and Defendant Dr. Rodney Look.  *See id.* ¶¶ 44–48.

14   However, Relator does not provide any basis for these allegations, such as from whom she

15   learned of this "unrelenting pressure," what this pressure entailed, why ED physicians would feel

16   obliged to comply with any such requests, how she knew that patients assigned Level 5 charges

17   should have been assigned lower-level charges, or any particularized descriptions of instances

18   when she observed or learned of patients whose charges were allegedly inaccurate.

19          Similarly, with regard to her allegations of "false billings for unnecessary and/or

20   upcoded medical procedures," Relator alleges that she attended a barbecue at which David

21   Santos (former CEO of SHCL) allegedly stated that "he had informed [Dr.] LOOK of the ED's

22   Left Without Being Seen (LWBS) rates and solicited ideas to charge for LWBS patients."  *Id.* ¶

23   51.  She does not allege that any Defendant took any actions in response to this alleged

24   discussion, nor does she provide any further context to this alleged statement, such as what ideas

25   were purportedly discussed or whether they included the provision of or billing for unnecessary

26   medical services.  Relator follows that statement with several conclusory allegations, none of

27   which provide the "who, what, when, where, and how" of the conduct charged.  *See id.* ¶¶ 51–

28   55.  For example, Relator asserts that Dr. Look demanded "higher charge levels" and medical

1   screening exams for patients of unspecified "physician[s]" and "assistant[s]," *id.* ¶ 51; that Dr.

2   Calloway would order x-rays and CT scans when physician assistants ("PAs") had performed

3   such tests at some prior time, *id.* ¶ 52; and that unspecified physicians "back-timed" Medical

4   Screening Exams after reviewing nurse triage notes, *id.* ¶ 54.  Relator's statements cannot meet

5   Rule 9(b)'s demanding standard with such vague and conclusory allegations.[2]

6          Additional allegations that presumably relate to Relator's FCA claims are even more

7   conclusory.  While Relator refers to "illegal kickbacks," the only allegation that could possibly

8   relate to that claim is the statement that "[Defendant Acute Medical Providers] also provided

9   housing for physicians while working—physicians that received bonuses to work in the

10  [Emergency Department], which, in turn, upcoded, charged for unnecessary services, and/or

11  charged for services not actually provided."  *Id.* ¶ 51.  The "who, what, where, when, and how"

12  of an alleged scheme to provide kickbacks is impossible to discern from this brief and

13  convoluted sentence, and it certainly does not meet the requirement that Relator allege the

14  underlying Anti-Kickback Statute ("AKS") violation with particularity.  *See United States v.*

15  *Chang,* No. CV-13-3772-DMG, 2017 WL 10544289, at *8 (C.D. Cal. July 25, 2017) ("Because

16  Relators have not sufficiently alleged the referring physicians' receipt of payment or other

17  remuneration in exchange for referrals, Relators have failed to state a claim under the AKS and

18  the FCA.").[3]

19      **B.      Relator Impermissibly Groups Multiple Defendants Together**

20          Relator also fails to meet the Rule 9(b) pleading standard as to Adventist Health

21  Defendants because she does not sufficiently plead her allegations against each Defendant.  "In

---

[2] Relator also includes allegations that do not describe any unlawful or even inappropriate behavior, such as that Mr. Santos, Dr. Shapiro, Dr. Look, and Dr. Calloway supported a Telemedicine Stroke Program (which Relator, who had worked at the facility for approximately three months at the time the program was proposed, deemed "premature") because "it would allow SHCL to charge patients more for services and potentially become a stroke receiving facility."  FAC ¶ 55.

[3] It is likewise unclear whether Relator intended the section titled "Dangerous Staffing Practices" (*id.* ¶¶ 56–60) to set forth an additional theory under which Defendants allegedly violated the FCA.  Relator does not explain how dangerous staffing in itself would result in the submission of false claims.  Instead, she appears to allege that some of the billing practices she describes in the prior sections stem "from inadequate staffing," *id.* ¶ 56, which undermines her claims of a fraudulent scheme performed with the requisite scienter.

the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum identify the role of each defendant in the alleged fraudulent scheme." *United States v. Corinthian Colls.*, 655 F.3d 984, 997–98 (9th Cir. 2011) (internal citation omitted) (holding that relator's complaint failed the heightened pleading requirements of Rule 9(b) because assertions that defendants monitored and approved the illegal recruiter compensation packages at issue did not set forth each defendant's participation in the alleged scheme) (reversing on other grounds).  The Ninth Circuit has routinely held that Rule 9(b) "does not allow a complaint to . . . lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (internal citations omitted) (affirming dismissal of complaint because it "grouped multiple defendants together and failed to set out which of the defendants made which of the fraudulent statements/conduct"); *see also Jones*, 2021 WL 3665939 at *8 (finding relator failed to state a claim under Rule 9(b) because she "lump[ed] Defendants together without alleging how each Defendant was involved in the alleged fraud").  Moreover, "[a]dequately pleading a claim under the FCA and CFCA against a parent corporation, rather than its subsidiary, requires identifying specific actions taken by that parent company." *United States ex rel. Ginger v. Ensign Grp., Inc.*, No. 8:15-cv-00389-JWH-DFMx, 2021 WL 9406134, at *3 (C.D. Cal. July 26, 2021).

Rather than specifically stating the roles that each Defendant allegedly held in the fraudulent scheme, Relator "collectively" names "ADVENTIST HEALTH," FAC ¶ 1, as the actor in the vast majority of her allegations against all Defendants.  *See, e.g.*, *id.* ¶ 44 ("ADVENTIST HEALTH fraudulently admitted and caused the admission of patients to hospitals. . . .  ADVENTIST HEALTH knowingly conspired to generate medically unnecessary inpatient admissions."); *id.* ¶ 45 ("ADVENTIST HEALTH was specifically interested in admitting patients to SHCL and SHNV, and in transporting patients from the former to the latter."); *id.* ¶ 46 ("ADVENTIST HEALTH made a concerted effort to increase admissions and reimbursement, . . . ADVENTIST HEALTH engaged in unlawful practices of assigning the highest possible level of charge . . . ."); *id.* ¶ 48 ("In the face of unrelenting pressure from ADVENTIST HEALTH, physicians fraudulently admitted patients, . . . ."); *see also id.* ¶¶ 49,

54, 56 (additional allegations attributed to "ADVENTIST HEALTH").  It is not sufficient for Relator to generally attribute actions allegedly taken by any of the Defendants to the Adventist Health corporate entity—she must identify the role of that entity (and all Defendant entities) in the alleged fraudulent scheme.  *Ginger*, 2021 WL 9406134 at *3.

Instead of meeting this burden, Relator fails to delineate any role whatsoever on the part of each Adventist Health entity in any fraudulent activity.  Entities that are mentioned individually are given only cursory treatment—and perhaps more remarkable, the FAC includes zero allegations against Adventist Health Southern California Medical Foundation or Adventist Health California Medical Group, and fails to describe the roles of hospital entities Adventist Health Clearlake Hospital and St. Helena Hospital in the alleged fraudulent scheme.  *See generally* FAC.  It is impossible for any Defendant to respond to Relator's claims where she does not identify her specific allegations pertaining to each Defendant.

Moreover, to the extent Relator attempts to attribute liability to Defendant Hospitals (or any other Adventist Health Defendant entity) on the basis of acts by individuals Dr. Look and Dr. Calloway acting as ED Medical Directors for those entities, she does so without legal basis.  Neither the Supreme Court nor the Ninth Circuit has weighed in on whether vicarious liability applies in the context of the False Claims Act.  *See United States v. Walgreen Co.*, No. 2:21-CV-00080-JRG-CRW, 2022 WL 791562, at *4 (E.D. Tenn. Mar. 14, 2022) (noting that Supreme Court has not addressed issue of "whether a company can be vicariously liable for its employee's actions" under the FCA); *City of L.A. Dep't of Water & Power v. Asplundh Constr. Corp.*, No. CV 12-06057 MMM (VBKx), 2012 WL 12941957, at *10 (C.D. Cal. Nov. 15, 2012) ("[T]he Ninth Circuit has not addressed whether and when an employee's false statements can be imputed to his employer under the FCA.").  Even if fraudulent acts by an agent can bind these entities, Relator must offer "sufficient facts . . . to support a reasonable inference that an agency relationship existed."  *Pascal v. Agentra, LLC*, No. 19-CV-02418-DMR, 2019 WL 5212961, at *3 (N.D. Cal. Oct. 16, 2019) (citation omitted).  Further, she must establish that any acts attributed to Drs. Look and Calloway are within the scope of the agency relationship.  *See Holley v. Crank*, 400 F.3d 667, 673 (9th Cir. 2005).  As Relator does not provide allegations

1    establishing either that an agency relationship existed or that alleged acts by Drs. Look and

2    Calloway fell within the scope of that relationship, her allegations against those individuals do

3    not suffice to allege vicarious FCA liability for Adventist Health Defendants.

4        **C.      Relator Fails to Plead a Presentment or False Certification Claim**

5              Relator's FAC fails to allege with particularity her claims under the FCA that Adventist

6    Health Defendants "knowingly present[ed], or cause[d] to be presented, a false or fraudulent

7    claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), or that Adventist Health Defendants

8    "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement material

9    to a false or fraudulent claim," 31 U.S.C. § 3729(a)(1)(B).[4]  "The essential elements of [a]

10   [r]elator's FCA claim are '(1) a false statement or fraudulent course of conduct, (2) made with

11   scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys

12   due.'"  *Adomitis ex rel. United States v. San Bernardino Mountains Cmty. Hosp. Dist.*, 816 F.

13   App'x 64, 66 (9th Cir. 2020) (quoting *United States ex rel. Hendow v. Univ. of Phx.*, 461 F.3d

14   1166, 1174 (9th Cir. 2006)).  As Relator fails to sufficiently allege any of the elements of her

15   FCA claims—falsity, scienter, materiality, or the submission of claims—these claims must be

16   dismissed.

17        **1.      Relator Fails to Plead Falsity of Claims or Certifications**

18             Relator's FCA claims cannot proceed because she fails to establish the falsity of claims

19   submitted.  A claim for payment can be "factually false," meaning that the claim "involves an

20   incorrect description of goods or services provided or a request for reimbursement for goods or

21   services never provided," *United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 675 (9th

22   Cir. 2018) (citation omitted), or it can hinge on a false certification to the government that is

23   express or implied, *United States ex rel. Mateski v. Raytheon Co.*, No. 2:06-cv-03614-

24   ODW(KSx), 2017 WL 3326452, at *4 (C.D. Cal. Aug. 3, 2017), *aff'd*, 745 F. App'x 49 (9th Cir.

25

26   _____

     [4] The CFCA is "patterned on similar federal legislation and it is appropriate to look to precedent
27   construing the equivalent federal act." *John Russo Indus. Sheetmetal, Inc. v. City of L.A. Dep't
     of Airports*, 240 Cal. Rptr. 3d 217, 224 (Cal. Ct. App. 2018) (quoting *California v. Altus Finance*
28   116 P.3d 1175, 1184 (Cal. 2005)).  Any failure to state a claim under the FCA will similarly
     foreclose claims alleged under the CFCA.

2018).  "Express false certification occurs when there is (1) a false certification or statement of compliance with a government regulation, (2) made with scienter, (3) that is 'material to the government's decision to pay out moneys to the claimant' and (4) the claim asks for payment from the government fisc."  *United States ex rel. Dresser v. Qualium Corp.*, No. 5:12-CV-01745-BLF, 2016 WL 3880763, at *5 (N.D. Cal. July 18, 2016) (quoting *Hendow*, 461 F.3d at 1170).  "Implied false certification . . . occurs where (1) there is a claim that 'does not merely request payment, but also makes specific representations about the goods or services provided;' and (2) 'the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths.'"  *Id.* at *6 (quoting *Escobar*, 579 U.S. at 190).

Relator appears to allege that certifications associated with claims for services provided were expressly or impliedly false because they violated regulations and guidance promulgated by the Centers for Medicaid and Medicare Services ("CMS") in connection with the Medicare program, as well as the medical necessity requirement set forth in the Social Security Act.  *See, e.g.,* FAC ¶¶ 23, 28 (citing "medical necessity" requirement under 42 U.S.C. § 1395y(a)(l)(A), 42 U.S.C. § 1396(a)(17), 42 C.F.R. § 430.10, and Cal. Medicaid Plan); *id.* (citing Medicare Program Integrity Manual ("MPIM") § 6.5.2 requirement that inpatient care "is required only if the beneficiary's medical condition, safety, or health would be significantly and directly threatened if care was provided in a less intensive setting"); *id.* ¶¶ 24–26 (citing Medicare Claims Processing Manual ("MCPM") § 100.5.1 and § 90.5 provisions stating that multiple tests on a patient are appropriate only when necessary and that providers cannot bill for "claims within the same processing cycle that match for the same service provider, beneficiary, and date of service" and will be reimbursed for repeated claims only in "circumstances in which a modifier may legitimately apply"); *id.* ¶ 29 (citing 42 C.F.R. § 413.24(f)(4)(iv) requirement that services identified in cost reports cannot be "provided or procured through the payment directly or indirectly of a kickback or where otherwise illegal").

Relator's allegations that Defendants violated any of the laws, regulations, or guidance cited above are exceedingly conclusory, and do not identify how any laws, regulations, or

guidance were in fact violated.  *See Parker v. Sea-Mar Cmty. Health Ctr.,* 853 F. App'x 197, 198 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 897 (2022) (finding that relator failed to state a legally cognizable theory that dental services billed to the federal government constituted "false statement or fraudulent course of conduct" where he did not establish that any laws, regulations, or guidance were violated).  For instance, "assigning the highest possible level of charge given the patient's primary complaint and presenting symptoms," *id.* ¶ 46, does not appear to run afoul of any of the cited regulations or guidance; nor does "demand[ing] higher charge levels and medical screening exams … for patients, regardless of whether a physician or assistant performed the exam," *id.* ¶ 51.  Similarly, Relator alleges that "PAs would perform examinations and order tests, such as x-rays and CT scans.  Then, prior to the patients' discharge, SHCL ED Medical Director Dr. Kathie Calloway would order the same tests."  *Id.* ¶ 52.  As Relator does not establish that it was not "necessary to obtain multiple results in the course of treatment" as to those patients (nor does she allege that these tests were performed on the same day), Relator does not allege a violation of CMS guidance.  *See* MPIM § 6.5.2.  In addition, Relator provides no basis for her conclusory allegations (at FAC ¶¶ 44, 46, 49–51) that services provided were not "medically necessary."  *See Holzner v. DaVita Inc.*, No. 21-55261, 2022 WL 726929, at *1 (9th Cir. Mar. 10, 2022) (finding no false statement where relator "has not raised a plausible inference that the nephrologists' certifications that these interventions are medically necessary—or appellees' reliance on those certifications—were false or fraudulent").

Relator also does not allege facts sufficient to establish that services performed by nurses and ED techs were charged as physician-completed tasks, FAC ¶¶ 53–54, 56, or even that such services could not be charged as such where the physician held a supervisory role or performed a supplemental service.  In *Parker*, the Ninth Circuit found that billing cleanings under a supervising dentist's National Provider Identifier ("NPI") rather than the NPI of the dental hygienist was not a false statement where there was "nothing prohibiting billing under the supervising dentist's NPI."  853 F. App'x at 198.  To the contrary, the court noted, "a dentist must supervise a dental hygienist performing in-clinic cleanings, Wash. Admin. Code § 246-817-550(9), and the billing guidelines note that 'a dental hygienists [*sic*] may bill an encounter only

ADVENTIST HEALTH DEFENDANTS' MOT. TO
DISMISS RELATOR'S AMENDED COMPL.
CASE NO. 3:20-CV-06458-LB

1   when s/he provides a service independently – not jointly with a dentist.'"  *Id.*  As in *Parker*,

2   agency guidance expressly acknowledges that a supervising physician may bill for services

3   performed by a non-physician provider under appropriate circumstances.  *See* Medicare Benefit

4   Policy Manual, Chapter 15, 60.1 (revised May 20, 2022) (physician may submit claims for

5   services performed by "auxiliary personnel" when such services are "furnished during a course

6   of treatment where the physician performs an initial service and subsequent services of a

7   frequency which reflect his/her active participation in and management of the course of

8   treatment" and where physician is "present in the office suite and immediately available to

9   provide assistance and direction throughout the time the aide is performing services"); *see also*

10  CMS, Medicare Learning Network, https://www.cms.gov/Outreach-and-Education/Medicare-

11  Learning-Network-MLN/MLNMattersArticles/downloads/se0441.pdf (last visited Sept. 26,

12  2022) (guidance to physicians clarifying that "incident to" services are "billed as Part B services

13  to your carrier as if you personally provided them, and are paid under the physician fee

14  schedule").[5]

15                      **2.      Relator Fails to Plead Materiality of False Claims or Certifications**

16          Relator not only fails to plead the falsity of claims, records, or statements; she also does

17  not allege that any falsity was material to payment by the government.  "[A] misrepresentation

18  about compliance with a statutory, regulatory, or contractual requirement must be material to the

19  Government's payment decision in order to be actionable under the False Claims Act."  *Escobar*,

20  579 U.S. at 181.  "[A] falsehood is material if it has 'a natural tendency to influence, or be

21  capable of influencing, the payment or receipt of money or property.'"  *United States ex rel.*

22  *Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 904–05 (9th Cir. 2017) (quoting 31 U.S.C. §

23  3729(b)(4)).  *Escobar* instructs that the FCA's materiality requirement is "rigorous" and

24  "demanding," and that Courts must strictly enforce it because the FCA is not "an all-purpose

25

26  ─────────────────

27  [5] In addition, because Relator does not allege the elements of her AKS claim (see above), she
    cannot establish that any claims or statements were false as a result of an underlying AKS
    violation.  *See Frazier ex rel. United States v. Iasis Healthcare Corp.,* 392 F. App'x 535, 537–38

28  (9th Cir. 2010) (finding relator failed to plead false certification where, *inter alia*, he did not
    sufficiently allege a scheme violating the AKS).

antifraud statute" nor "a vehicle for punishing garden-variety breaches of contract or regulatory violations." 579 U.S. at 192–94 (citation omitted).  The standard is not "too fact intensive for courts to dismiss [FCA] cases on a motion to dismiss." *United States v. Kinetic Concepts, Inc.*, No. CV 08-01885-BRO (AGRx), 2017 WL 2713730, at *10 (C.D. Cal. Mar. 6, 2017) (quoting *Escobar*, 579 U.S. at 196 n.6).

Relator does not—and cannot—allege that the purported falsity of claims submitted to government payors was material to payment.  "[A] misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Escobar*, 579 U.S. at 194.  Nor is it sufficient that the government "would have the option to decline to pay if it knew of the defendant's noncompliance." *Id.*  Instead, to satisfy the False Claims Act's materiality standard, a complaint must allege with particularity that the defendant's supposed violations "are so central . . . that the [government] would not have paid these claims had it known of these violations." *United States v. Scan Health Plan*, No. CV 09-5013-JFW (JEMx), 2017 WL 4564722, at *6 (C.D. Cal. Oct. 5, 2017) (quoting *Escobar*, 579 U.S. at 194).  As described above, Relator does not sufficiently allege that services provided by Adventist Health Defendants violated any law, regulation, or guidance. *See infra* at 13–15.  Moreover, even if claims for reimbursement contained misrepresentations as to some characteristics of the services provided, Relator does not establish that such misrepresentations would impact payment by the government.  For example, if one of the Adventist Health Defendants were to have billed services provided under the supervision of a physician as if it were provided by the physician herself, CMS guidance states that reimbursement to the physician would be identical (and any alleged misrepresentation therefore would not be material to payment). *See infra* at 15.  Relator has not met her burden to allege materiality.

### 3.    Relator Fails to Plead Submission of False Claims

The actual submission of a false or fraudulent claim to the government is the *sine qua non* of an FCA action. *See Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) ("The FCA attaches liability, not to the underlying fraudulent

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

1    activity or to the government's wrongful payment, but to the claim for payment.") (internal

2    quotations and alterations omitted).  "It is not enough . . . to describe a private scheme in detail

3    but then to allege simply and without any stated reason for [this] belief that claims requesting

4    illegal payments must have been submitted."  *United States v. Kitsap Physicians Serv.*, 314 F.3d

5    995, 1002 (9th Cir. 2002) (internal quotations and citation omitted).  A relator's allegations must

6    (1) "identify examples of false claims" to the government, or (2) allege "reliable indicia that lead

7    to a strong inference that claims were actually submitted."  *Ebeid*, 616 F.3d at 998–99; *see*

8    *Cafasso*, 637 F.3d at 1057 ("In light of [relator's] failure to identify any particular false claims or

9    their attendant circumstances, as well as the 'obvious alternative explanation' that no false claims

10   occurred, we will not draw the unwarranted and improbable inference that discovery will reveal

11   evidence of such false claims.").

12           As previously stated, Relator fails to allege with particularity that any claims for services

13   provided were materially false.  Relator also makes no allegations *whatsoever* of actual claims

14   submitted to federal or state payors, nor does she allege "reliable indicia that lead to a strong

15   inference" that false claims were submitted to the government.  *Ebeid*, 616 F.3d at 998–99.

16   Relator's only allegations referring to the submission of false claims are boilerplate statements

17   that "ADVENTIST HEALTH knowingly submitted false claims."  FAC ¶¶ 2–3, 48; *see also id.*

18   ¶¶ 44, 65.  In addition, Relator does not allege any facts sufficient to support the inference that

19   any Defendant submitted false claims.  *See United States v. McKesson Corp.*, No. 19-CV-02233-

20   DMR, 2020 WL 4805034, at *6 (N.D. Cal. Aug. 18, 2020) (dismissing complaint where relators

21   "cite no facts supporting that McKesson submitted claims under these federal programs");

22   *United States ex rel. Modglin v. DJO Glob. Inc.* 48 F. Supp. 3d 1362, 1407 (C.D. Cal.

23   2014), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017)

24   (holding that relators "have not adequately pled reliable indicia leading to a strong inference that

25   defendants actually submitted false claims to each of the federal programs").

26           In *McKesson*, the court found the relator's allegations regarding the submission of claims

27   insufficient where the complaint did not "explain the basis or source of Relators' knowledge with

28   respect to the listed federal programs."  2020 WL 4805034 at *6.  In comparison, the *Modglin*

1    court found that the relator had adequately pled the submission of claims to certain federal

2    payors (but not others) based on his allegations that the defendant's regional sales director

3    explicitly told him that such claims were submitted.  *See* 48 F. Supp. 3d at 1407.  Relator does

4    not allege any facts reflecting knowledge of the billing process or submission of claims to federal

5    healthcare programs in her short-lived role as ED Director of a single Adventist hospital, based

6    either on her own experience or communications from others with knowledge of or familiarity

7    with that process.  Therefore, Relator cannot establish that any Defendant submitted allegedly

8    false claims to the government.

9                   **4.      Relator Fails to Allege Scienter as to False Claims or Certifications**

10           An FCA claim requires a showing that a false statement or fraudulent course of conduct

11   was made "knowingly," or with "scienter."  *Gilead Scis., Inc.*, 862 F.3d at 898–99.  "Although

12   Rule 9(b) allows plaintiffs to allege scienter generally . . . scienter must still be pled with

13   plausibility under Rule 8(a)."  *Adomitis*, 816 F. App'x at 66.  For FCA purposes, "knowing"

14   means that a defendant "(i) has actual knowledge of the information; (ii) acts in deliberate

15   ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth

16   or falsity of the information."  31 U.S.C. § 3729(b)(1).  "Mere negligence, however, is

17   insufficient to state a claim under the FCA."  *United States ex rel. Integra Med Analytics LLC v.*

18   *Providence Health & Servs.*, No. CV 17-1694 PSG (SSx), 2019 WL 3282619, at *21 (C.D. Cal.

19   July 16, 2019), *rev'd and remanded on other grounds, Integra Med Analytics LLC v. Providence*

20   *Health & Servs.*, 854 F. App'x 840 (9th Cir. 2021).  Moreover, "[a] complaint . . . must set out

21   sufficient factual matter from which a defendant's knowledge of a fraud might reasonably be

22   inferred."  *Silingo*, 904 F.3d at 679–80 (citing *Iqbal*, 556 U.S. at 678); *see Jones,* 2021 WL

23   3665939 at *8 ("Relator does not set out allegations that support her assertion that Defendants

24   had knowledge of fraud.").

25           Relator's boilerplate allegations that "ADVENTIST HEALTH knowingly submitted false

26   claims," FAC ¶ 2, are not even sufficient to meet the Rule 8(a) plausibility standard applied to

27   the scienter element of FCA claims— and her factual allegations do not support an inference that

28   Adventist Health Defendants knew or should have known that services provided and billed to

1    government payors did not comply with federal rules or guidance.  *See Adomitis*, 816 F. App'x at

2    66–67; *United States, ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1024 (C.D. Cal.

3    2015), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017).  In

4    *Adomitis*, the Ninth Circuit affirmed the district court's dismissal of an FCA complaint for

5    scienter deficiencies, where the relator's "factual allegations fail[ed] to raise his scienter

6    allegations above mere speculation even under the more-expansive scienter inquiry."  816 F.

7    App'x at 66.  While the relator in that case included bare-bones allegations that the defendants

8    knew that their driving route did not comply with distance requirements for Critical Access

9    Hospitals as set forth in federal regulatory guidance, the court found that the relator "failed to

10   plead sufficient facts that would warrant a plausible inference that [defendant] knew, recklessly

11   disregarded, or was deliberately ignorant of" the alleged violations.  *Id.* at 67.  Similarly, the

12   *Modglin* court found that the relators' allegations that the defendants "knew" their acts were

13   unlawful were "too conclusory to plead a plausible claim for relief, even under the relaxed

14   standard of Rule 8(a)" where the relators failed to "cite any Medicare statute, regulation, NCD,

15   LCD, or claim form" prohibiting submission of claims for off-label medication usage that would

16   put defendant "on notice they were filing false claims," or to otherwise provide "any factual

17   allegations supporting relators' assertion that defendants acted with the requisite scienter."  114

18   F. Supp. 3d at 1406–07.  Similarly, Relator's cursory scienter allegations do not suffice to

19   support an inference of scienter regarding the alleged submission of false claims for services

20   provided, particularly as she does not allege with specificity that any laws, regulations, or

21   guidance were violated by the Adventist Health Defendants.  *See supra* at 15.

22       **D.    Relator Fails to Plead a Reverse False Claim**

23       Relator also fails to allege that Adventist Health Defendants violated the "reverse" FCA

24   provision prohibiting the retention of overpayments by the government.  *See* 31 U.S.C. §

25   3729(a)(1)(G).  "The reverse-FCA provision makes liable anyone who '[(1)] knowingly makes,

26   uses, or causes to be made or used, a false record or statement material to an obligation to pay or

27   transmit money or property to the Government, or [(2)] knowingly conceals or knowingly and

28   improperly avoids or decreases an obligation to pay or transmit money or property to the

1  Government.'"  *United States ex rel. Ormsby v. Sutter Health*, 444 F. Supp. 3d 1010, 1055 (N.D.

2  Cal. 2020) (quoting 31 U.S.C. § 3729(a)(1)(G)).  "The Ninth Circuit has explained that a

3  'reverse' FCA claim cannot be a simple repackaging of a standard FCA claim, because

4  'Congress intended the reverse false claims provision to apply only to existing legal duties to pay

5  or deliver property.'"  *United States ex rel. Fallon v. Bell Transit Corp.*, No. 16-CV-06994-PJH,

6  2021 WL 965379, at *9 (N.D. Cal. Mar. 15, 2021) (quoting *United States v. Bourseau*, 531 F.3d

7  1159, 1169 (9th Cir. 2008)).  "So, to state a reverse false claim, the obligation must arise from

8  some independent legal duty."  *United States ex rel. Martinez v. KPC Healthcare Inc.*, No. 8:15-

9  cv-01521-JLS-DFM, 2017 WL 10439030, at *6 (C.D. Cal. June 8, 2017) (citation omitted).

10      As described above, Relator fails to allege with particularity that any submission of false

11  claims has occurred; therefore such allegations cannot serve as the basis for her claim that

12  Adventist Health Defendants received an overpayment.  *See United States ex rel. Kelly v. Serco,*

13  *Inc.,* 846 F.3d 325, 336 (9th Cir. 2017) ("The 'reverse false claims' provision does not eliminate

14  or supplant the FCA's false claim requirement.") (quoting *Cafasso*, 637 F.3d at 1056).  Nor does

15  Relator allege when supposed overpayments by the government were identified by Adventist

16  Health Defendants.  When a plaintiff claims that an independent obligation arises from the

17  retention of an overpayment by a federal payor, she must plausibly allege that the defendant

18  "identified" an overpayment and withheld it for more than 60 days or failed to disclose it in an

19  applicable cost report.  *See* 42 U.S.C. § 1320a-7k(d)(2)-(3).  Relator fails to plead that Adventist

20  Health Defendants identified or retained any overpayments, and her reverse false claim must be

21  dismissed.

22      **E.      Relator Fails to Plead a Conspiracy Claim Under the FCA**

23       Relator fails to allege that Adventist Health Defendants participated in a conspiracy to

24  defraud the government.  "To state a claim for conspiracy under the FCA, a plaintiff must show

25  that (1) the defendant agreed with one or more persons to get a false or fraudulent claim allowed

26  or paid by the United States; (2) one or more conspirators performed any act to effect the object

27  of the conspiracy; and (3) the United States suffered damages as a result."  *United States v.*

28  *Vandewater Int'l Inc.*, No. 2:17-cv-04393-RGK-KS, 2019 WL 6917927, at *5 (C.D. Cal. Sept. 3,

2019); *see also Lesnik v. Eisenmann SE*, No. 16-CV-01120-LHK, 2018 WL 4700342, at *8 (N.D. Cal. Oct. 1, 2018) ("Rule 9(b) requires that plaintiffs 'alleging conspiracy claims under Section 3729(a)(1)(C) must allege the existence of an agreement between the defendants to violate the FCA.'" (citations omitted)). This district, like many courts across the nation, has held that FCA conspiracy claims are subject to the heightened pleading requirements of Rule 9(b). *United States ex rel. Marion v. Heald Coll., LLC*, No. 5:12-cv-02067-PSG, 2015 WL 4512843, at *5 n.4 (N.D. Cal. July 24, 2015) (collecting cases).

In *Lesnik*, the court concluded that relator's failure to allege the existence of any agreement "compel[ed] dismissal of the FCA [conspiracy] claim" as to certain defendants. 2018 WL 4700342, at *8; *see also Vandewater*, 2019 WL 6917927 at *6 ("[T]he FAC does not contain sufficient factual allegations that . . . Defendants entered into an agreement with (or even acted in concert with)" other alleged conspiracy participants.). Relator has failed to allege with particularity any agreement to submit a false or fraudulent claim, or to obtain an overpayment, nor does she allege any act in furtherance of such an alleged conspiracy. In addition, because Relator has failed to allege the submission of false claims, she has not established that the United States "suffered damages" related to an alleged conspiracy. *Vandewater*, 2019 WL 6917927 at *5. As discussed below, Relator appears to allege some form of coordinated effort by the hospital to "punish and silence her." *See, e.g.*, FAC ¶ 125. However, not only has Relator alleged these claims insufficiently; they also bear no relation to Relator's FCA conspiracy claims, as they do not involve an agreement "to get a false or fraudulent claim allowed or paid by the United States." *Vandewater*, 2019 WL 6917927 at *5 (citation omitted).

### F.    Relator Fails to Plead an FCA Retaliation Claim

The relative length and level of detail in Relator's FCA retaliation allegations, FAC ¶¶ 67–128, as compared with her other FCA claims, *id.* ¶¶ 44–54, 56, reveals that her retaliation allegations are the inspiration for her lawsuit. But Relator's FCA retaliation claims cannot survive because they are time-barred under the relevant statutes. Under the FCA, a relator must file a complaint for retaliation within three years of the alleged retaliation. *See* 31 U.S.C § 3730(h)(3); *see also* Cal. Gov't Code § 12653(c) (establishing identical limit under the CFCA).

1   It is indisputable that Relator failed to meet this deadline—she filed her initial Complaint on

2   September 15, 2020, more than *five* years after any alleged retaliation by Adventist Health

3   Defendants in March or April 2015.  *See* FAC ¶¶ 93, 99.  Thus, Relator's claims are well outside

4   the statute of limitations and must be dismissed.

5           Even if Relator had brought her retaliation claims timely (which she did not), Relator

6   fails to plead retaliation under the FCA because she does not establish *any of* the elements of

7   such a claim—(1) that she engaged in conduct protected under the FCA; (2) that her employer

8   knew that she engaged in protected conduct; or (3) that her employer discriminated against her

9   because of her protected conduct.  *See Lillie v. ManTech Int'l Corp.*, 837 F. App'x 455, 457 (9th

10  Cir. 2020) (citing *Gilead Scis., Inc.*, 862 F.3d at 907; 31 U.S.C § 3730(h)).  The same three

11  elements are required under the CFCA.  *See McVeigh v. Recology S.F.*, 213 Cal. App. 4th 443,

12  455 (Cal. Ct. App. 2013); *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th

13  Cir. 2008).

14          First, Relator has failed to allege that she engaged in protected activity under the FCA.

15  An employee engages in protected activity where (1) the employee in good faith believes, and

16  (2) a reasonable employee in the same or similar circumstances might believe, that the employer

17  is possibly committing fraud against the government.  *See Moore v. Cal. Inst. of Tech. Jet*

18  *Propulsion Lab'y*, 275 F.3d 838, 845 (9th Cir. 2002).  The FCA only protects employees where

19  they act in furtherance of an action under the FCA—meaning that "the plaintiff must be

20  investigating matters which are calculated, or reasonably could lead, to a *viable* FCA action."

21  *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996) (emphasis added).

22  Relator refers to "communicat[ing] staffing, safety, and other issues she encountered" to Chief

23  Nursing Officer Colleen Assavapisitkul, FAC ¶ 70, including a statement that "[w]e need to

24  make sure we are not calling eloped patients LWBS patients - I think we are and I'm going to

25  have Tim [Hall] look at the data.  I think our AMAs and LWBS numbers are flip flopped since

26  you can't charge for an MSE if the patient LWBSed from the waiting room," *id.* ¶ 71.  These

27  communications do not rise to the level of protected activity—Relator establishes only that she

28  raised a concern about a potential error in patient coding, and does not allege that any Defendant

1  took any other steps or that Relator ever identified whether such an error had occurred.  *See*

2  *Hopper*, 91 F.3d at 1269 ("Correcting regulatory problems may be a laudable goal, but one not

3  actionable under the FCA in the absence of actual fraudulent conduct.").

4       Relator's allegations about the basis for retaliatory action against her appear to relate to

5  individuals she personally slighted or otherwise upset, rather than any investigation into matters

6  related to a potential FCA violation.  She suggests retaliation on the basis that she "proposed

7  scheduling changes that would disrupt [a staff member's] manipulated schedule and reduce the

8  enormous wages earned therefrom," FAC ¶ 73; that she sought to "implement safe, financially

9  sound practices," which appears to refer to use of staff nurses rather than contract travel nurses,

10 *id.* ¶ 74; that she was "bossy" and changed nurses schedules, *id.* ¶ 89; and that she denied a

11 "request to hire an inexperienced per diem nurse 'friend'" of a staff RN, *id.* ¶ 91.  None of these

12 acts qualify as protected activity under the FCA.

13      Second, Relator fails to allege that her employer "knew that [s]he engaged in protected

14 conduct." *Lillie*, 837 F. App'x at 457.  "Unless the employer is aware that the employee is

15 investigating fraud, the employer could not possess the retaliatory intent necessary to establish a

16 violation of § 3730(h)." *See Hopper*, 91 F.3d 1261 at 1269.  As Relator fails to allege that she

17 engaged in protected conduct, she cannot establish that her employer knew that she engaged in

18 such conduct.  For instance, because Relator's text to Assavapisitkul merely questioned LWBS

19 patient numbers, FAC ¶ 71, it did not suffice to constitute notice of protected activity.  It is also

20 not clear from Relator's general allegation that she communicated "staffing, safety, and other

21 issues she encountered" to Assavapisitkul that Assavapisitkul was on notice of any protected

22 activity.

23      Finally, Relator fails to allege that she was terminated *because* she engaged in protected

24 activity.  *See United States v. Eisenhower Med. Ctr.*, No. 5:18-CV-02667-RGK-KK, 2020 WL

25 6153103, at *9 (C.D. Cal. May 12, 2020).  Relator suggests retaliation against her both in the

26 form of her termination, *see* FAC ¶ 92, and in the fact that she was reported to the BRN, which

27 then investigated her conduct, *see id.* ¶ 99.  However, Relator has not established that she

28 engaged in any protected conduct, or that her employer knew about any protected conduct, so it

follows that she cannot establish that either form of alleged retaliation resulted from such conduct.  In addition, the timeline of Relator's allegations is telling: her text message to Assavapisitkul concerning LWBS patients was sent on February 5, 2015.  *Id.* ¶ 71. Assavapisitkul emailed Human Resources to request an extension of Relator's probationary period on March 17, 2015.  *Id.* ¶ 105.  The patient safety issue where Relator performed a procedure outside her scope of practice occurred on March 23, 2015.  *Id.* ¶¶ 79–84.  Relator was then suspended on March 27, 2015.  *Id.* ¶ 24.  Sometime between March 31 and April 7, Relator was terminated.  *Id.* ¶ 93.  A complaint was filed against Relator with the BRN on April 4, 2015. *Id.* ¶ 99.  These facts make clear that Relator was terminated because of the patient safety issue, rather than Assavapisitkul retaliating against Relator based on her text messages.

In fact, according to Relator's FAC, any alleged retaliation against her was not "because of" protected conduct (which she has not alleged), but instead was a result of the significant tensions she outlines with her former coworkers.  For instance, Relator alleges that Lindsay Lenz, a charge nurse, "told a BRN investigator that Relator was a 'liar,' 'dishonest,' 'mentally unstable,' and 'nutty,'" *id.* ¶ 87; that "Lenz complained about her—namely, that Lenz was upset with Relator, the ED Director, for being bossy," and that Lenz reported to her superior that "per diem nurses had complained to her about Relator changing their schedules," *id.* ¶ 89; that another staff member also had motive to retaliate against Relator because he "ran a nurse staffing company that profited significantly from doing business with ADVENTIST HEALTH and also earned roughly three times the normal wages for an ER nurse by gaming the system" at St. Helena Hospital, *id.* ¶ 90; and that a nurse "whose work with an expired license had been caught by Relator, and whose request to hire an inexperienced per diem nurse "friend" had been denied by Relator—had motive to retaliate," *id.* ¶ 91.  Whatever ire Relator had drawn from these individuals, on whatever basis, is irrelevant to Relator's FCA retaliation claims and forecloses her claims of retaliation for protected conduct by Adventist Health Defendants.

### G.     Relator Fails to Plead a Defamation Claim

Relator's state law defamation claim is time-barred because it was not filed within the one-year statute of limitations for an action for libel or slander under California law.  *See* Cal.

1   Civ. Proc. Code § 340(c); *Shively v. Bozanich*, 31 Cal. 4th 1230, 1246–47 (Cal. 2003), *as*

2   *modified* (Dec. 22, 2003).  Relator appears to allege that several Adventist Health employees

3   made defamatory statements to the BRN during the BRN's 2015–2016 investigation into a report

4   that Relator had practiced outside the scope of her license, committed documentation errors, and

5   diverted controlled substances.  FAC ¶¶ 99, 108, 172.  Relator alleges that she learned of these

6   statements on July 16, 2018.  *Id.* ¶¶ 125, 173.  Even if the "discovery rule" were to apply here,

7   meaning that accrual "is delayed until the plaintiff discovered . . . the factual basis for his or her

8   claim," *Shively*, 80 P.3d at 686, Relator *still* did not file her initial Complaint until September 15,

9   2020—*more than two years* after she learned of any allegedly defamatory statements, *see* Dkt.

10   No. 1.

11        Relator also fails to establish that Adventist Health Defendants are vicariously liable for

12   alleged defamation committed by its employees.  "To be vicariously liable for the publication of

13   another under the doctrine of respondeat superior, the employee or agent must have been 'acting

14   in the scope of his authority and in furtherance of the employer's business.'"  *Alexander v. Cmty.*

15   *Hosp. Long Beach*, 46 Cal. App. 5th 238, 264 (Cal. Ct. App. 2020) (quoting *Sanborn v.*

16   *Chronicle Publ'g Co.*, 18 Cal.3d 406, 411 (Cal. 1976)).  Relator alleges neither that any

17   employee of Adventist Health Defendants whom she accuses of defaming her did so within the

18   scope of their authority, nor that they did so in furtherance of Adventist Health Defendants'

19   business, and therefore does not establish that the doctrine of respondeat superior applies to her

20   tort allegations against any Adventist Health Defendant employees (who are not named as

21   Defendants in this case).

22        Relator also fails to sufficiently plead the elements of her defamation claim itself.  Under

23   California law, a defamation claim requires that a plaintiff demonstrate: (1) a publication that is

24   (2) false, (3) defamatory, (4) unprivileged, and (5) has a tendency to injure or causes special

25   damage.  *See Briganti v. Chow*, 42 Cal.App.5th 504, 509 (Cal. Ct. App. 2019) (citation omitted);

26   *see also Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 264 (9th Cir. 2013) ("Under California

27   law, defamation is the intentional publication of a statement of fact which is false, unprivileged,

28

ADVENTIST HEALTH DEFENDANTS' MOT. TO
DISMISS RELATOR'S AMENDED COMPL.
CASE NO. 3:20-cv-06458-LB

1  and has a natural tendency to injure or which causes special damage." (internal quotations and

2  citations omitted)).

3         First, Relator fails to plead the alleged defamatory statements with sufficient specificity.

4  "Under California law, although a plaintiff need not plead the allegedly defamatory statement

5  verbatim, the allegedly defamatory statement must be specifically identified, and the plaintiff

6  must plead the substance of the statement." *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198,

7  1216 (C.D. Cal. 2004) (citing *Okun v. Super. Ct.*, 29 Cal.3d 442, 458 (Cal. Ct. App. 1981)

8  (citations omitted).  To sufficiently plead defamation, the plaintiff must identify "(1) what

9  allegedly defamatory statement was made; (2) when it was made; (3) to whom it was made; and

10 (4) that the statement had a natural tendency to injure or cause special damages.'" *See CSPC*

11 *Dophen Corp. v. Zhixiang Hu*, No. 2:17-cv-1895 MCE DB PS, 2018 WL 6184617, at *5 (E.D.

12 Cal. Nov. 27, 2018).  Relator does not clearly delineate which statements provide the basis for

13 her defamation claim, and fails to include necessary allegations such as when and to whom the

14 alleged statements were made.

15        For the purposes of this motion, Adventist Health Defendants have identified these

16 statements that Relator potentially alleges as the basis for her defamation claim: Lenz's alleged

17 statement to a BRN investigator that Relator was a "liar," "dishonest," "mentally unstable," and

18 "nutty," FAC ¶ 87 ("Statement 1"); Assavapisitkul's alleged statement that Relator was

19 terminated because of a "lack of judgment," "errors," required frequent "coaching," missed

20 weeks of work without an explanation, and may be mentally ill, *id.* ¶ 104 ("Statement 2");

21 Assavapisitkul's alleged statement that Relator "committed documentation errors and/or diverted

22 controlled substances," *id.*  ¶ 108 ("Statement 3"); and Assavapisitkul's alleged statements that

23 Relator was mentally unstable and had a "lack of experience" and was a "drama queen," *id.* ¶

24 109–111 ("Statement 4").

25        Relator fails to plead that the statements potentially at issue are false or defamatory.

26 "[T]o be actionable, an allegedly defamatory statement must make an assertion of fact that is

27 provably false." *John Doe 2 v. Super. Ct.*, 1 Cal. App. 5th 1300, 1314 (Cal. Ct. App. 2016).

28 "[R]hetorical hyperbole, vigorous epithets, lusty and imaginative expressions of contempt, and

1   language used in a loose, figurative sense have all been accorded constitutional protection."

2   *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 800 (Cal. Ct. App. 2002).  "[W]hen a

3   communication identifies nondefamatory facts underlying an opinion, or the recipient is

4   otherwise aware of those facts, a negative statement of opinion is not defamatory."  *John Doe 2*,

5   1 Cal. App. 5th at 1314.  An employer's statements about an "employee's efforts, attitude,

6   performance, potential or worth to the enterprise, even if objectively false, are considered

7   opinions."  *Bowles v. Constellation Brands, Inc.*, 444 F. Supp. 3d 1161, 1174 (E.D. Cal. 2020)

8   (citing *Gould v. Md. Sound Indus., Inc.*, 31 Cal. App. 4th 1137, 1153–54 (Cal. Ct. App. 1995)).

9   The alleged statements potentially at issue express opinions which either are hyperbolic

10  statements of contempt or are statements about Relator's "efforts, attitude, performance,

11  potential or worth to the enterprise," *see Bowles*, 444 F. Supp. 3d at 1174, and are thus neither

12  false nor defamatory.

13         Finally, the statements potentially alleged as defamatory are protected under the qualified

14  privilege.  A defamatory statement is subject to conditional privilege if made in a

15  communication, without malice, to an interested person, (1) by one who is also interested, or (2)

16  by one who stands in such relation to the person interested as to afford a reasonable ground for

17  supposing the motive for the communication to be innocent, or who has been asked by the

18  person interested to give the information.  Cal. Civ. Code § 47(c).  "The malice necessary to

19  defeat a qualified privilege is 'actual malice' which is established by a showing that the

20  publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the

21  defendant lacked reasonable ground for belief in the truth of the publication and therefore acted

22  in reckless disregard of the plaintiff's rights."  *Taus v. Loftus*, 40 Cal. 4th 683, 721 (Cal. 2007).

23  Statements made by an employer to a state nursing board fall within the scope of qualified

24  privilege.  *See Lee v. Eden Med. Ctr.*, 690 F. Supp. 2d 1011, 1023 (N.D. Cal. 2010) (statements

25  from coworkers to BRN about plaintiff's mental health were made by "interested persons" and

26  fell within the scope of the qualified privilege).

27         Relator's allegations do not suffice to establish that statements made by her coworkers

28  were communicated to the BRN with malice.  Relator fails to allege that Assavapisitkul had any

1   ill will towards Relator; she merely states that the text messages "dried up" after Relator raised

2   unspecified "concerns" to Assavapisitkul.  FAC ¶ 72.  As for the others, Relator alleges various

3   reasons that she believes these individuals were unhappy with her or disliked her, such as that

4   Lenz was "upset with Relator" for being bossy and because staff nurses complained about

5   Relator to Lenz.  *Id.* ¶ 89.  However, these allegations do not establish "hatred or ill will" nor do

6   they establish that these individuals lacked reasonable ground for belief in the truth of the

7   publication.  Because Relator has failed to allege a basis for vicarious liability; to allege

8   defamatory statements with specificity; to allege that statements were false or defamatory; or to

9   allege actual malice (and because her defamation claim is time-barred), her defamation claim

10  must fail.

11  **V.      CONCLUSION**

12          For the foregoing reasons, Adventist Health Defendants respectfully request that the Court

13  grant its Motion to Dismiss and dismiss Relator's First Amended Complaint with prejudice.

14

15  Dated: September 26, 2022                    Respectfully submitted,

16                                              LATHAM & WATKINS LLP

17

18                                              By: */s/  Jason M. Ohta*

19                                              Jason M. Ohta
                                                *Attorneys for Defendants Adventist Health*
20                                              *System/West dba Adventist Health, Adventist Health*
                                                *Clearlake Hospital, Inc., St. Helena Hospital, Inc.,*
21                                              *Adventist Health California Medical Group, and*
                                                *Adventist Health Southern California Medical*
22                                              *Foundation*

23

24

25

26

27

28